No. 2996

Second Circuit

---

TALLEY v. ALABAMA PET. CO.

---

(June 28, 1927. Opinion and Decree.)
(July 14, 1927. Application for Rehearing.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Appeal—Par. 625.—
Master and Servant—Par. 1601.

The finding of a trial judge that an accident to an employee happened after he had begun the performance of the day's work in the service of his employer is a finding of fact and will not be disturbed unless manifestly erroneous.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by Arthur Talley against Alabama Petroleum Company, Inc.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers, of New Orleans, attorneys for defendants, appellants.

REYNOLDS, J. Plaintiff sued the defendants under the Employers' Liability Law (Act 20 of 1914 and amendments) for $20.00 a week for three hundred weeks, beginning January 20, 1926, with legal interest on each installment from its maturity until paid, less certain credits.

He alleged that while working for defendant Alabama Petroleum Company, Inc., on January 13, 1926, in the capacity of foreman of roustabouting gang he undertook to crank and start a Ford automobile belonging to defendant Alabama Petroleum Company, Inc., and that the "crank became engaged and was thrown against petitioner's right arm, breaking, mangling and bruising the bones, nerves * * * of the arm and wrist in such manner and to such an extent that petitioner has a limited use of the same."

He further alleges that he was earning a weekly wage of $45.00 at the time of the accident and that his earning capacity had been reduced by the injury to $5.00 a week.

He further alleged that by contract between defendant Alabama Petroleum Company, Inc., and defendant Maryland Casualty Company the latter "agreed to pay your petitioner any and all sums for which the said defendant, Alabama Pe-

troleum Company, Inc., might be liable * * * and to pay all such compensation as might be adjudged in favor of your petitioner."

He further alleges that compensation had been paid him up to the date of filing the suit, namely, July 17, 1926, but that defendants had refused to make further payments.

Both defendants filed exceptions of no cause of action and of vagueness. The exceptions of no cause of action were overruled and the exceptions of vagueness sustained and plaintiff permitted to file an amended petition.

Apparently an amended petition was filed, for the record contains answers by both defendants to an amended petition but we do not find it in the record.

The defense is that plaintiff was not injured in the performance of the duties of his employment; that instead of being injured at 7 o'clock in the morning he was injured about 6 o'clock in the morning; that instead of being injured on defendant Alabama Petroleum Company, Inc.'s property he was injured at or near his own home several miles distant from defendant Alabama Petroleum Company, Inc.'s property; that the car plaintiff was cranking did not belong either to defendant Alabama Petroleum Company, Inc., or defendant Maryland Casualty Company, but belonged to a friend of plaintiff with whom he was expecting to ride; that plaintiff's duties were to commence at 7 o'clock in the morning and he was neither required nor expected to begin work prior to that time; that he was receiving a daily wage of $6.00 and that each day constituted a separate employment; that defendant Alabama Petroleum Company, Inc., had not agreed to furnish and was not furnishing plaintiff with trans-

portation to or from his work; and that plaintiff was not at the time of the accident performing duties arising out of or in the course of his employment.

It is also alleged that when plaintiff received his injury he informed defendant Maryland Casualty Company that he was injured at 7 o'clock in the morning of January 6, 1926, in the course of his employment by defendant Alabama Petroleum Company, Inc., on its property known as the "Robbins lease," and that on the faith of such representations defendant Maryland Casualty Company paid him compensation aggregating $520.00 and paid $81.90 for medical attention to plaintiff; that the representations were false and defendant Maryland Casualty Company entitled to recover said amounts from plaintiff.

And the Maryland Casualty Company prayed also for judgment in reconvention against plaintiff for $601.90 with legal interest thereon.

On these issues the case was tried and there was judgment in favor of plaintiff and against only defendant Alabama Petroleum Company, Inc., for $20.00 a week during his disability, not to exceed one hundred seventy-five weeks, the first payment being decreed due January 20, 1926, with legal interest on each installment from its maturity until paid, less compensation already paid up to July 16, 1926.

Apparently no judgment was rendered for or against defendant Maryland Casualty Company.

Both defendants appealed. In this court plaintiff moved to amend the judgment so as to allow him $20.00 a week during his disability not to exceed three hundred weeks.

## OPINION

The record and briefs in this case present numerous interesting questions of fact and law, but in their arguments and briefs counsel only stress the issue as to whether plaintiff, at the time he was injured, had actually entered upon the performance of the day's work under his employment by defendant Alabama Petroleum Company, Inc., or not, and this issue and that as to the amount of compensation plaintiff is entitled to, if any, are the only questions, we think, necessary to be decided by us.

Plaintiff was employed in the capacity of what is known as "gang-pusher," his duties being to move from one of defendant Alabama Petroleum Company, Inc.'s properties to another and push production. His work, therefore, began as soon as he entered on any piece of property under defendant Alabama Petroleum Company, Inc.'s dominion and continued as he went from one piece of property to another in the performance of his duties throughout the day.

He testified that on January 13, 1926, he was employed by defendant Alabama Petroleum Company, Inc., as a gang-pusher and——

"What were you doing on the 13th of June (January?) 1926?
"A. Well, I started to work that morning and got out by the Garner lease, stopped there, done something to that well, I forget just exactly what, and started on over to the Robinson lease; then is when I got my arm broke, the car stopped.
"Q. Who did that Garner lease belong to?
"A. Alabama Petroleum Company.
"Q. Was it one of the leases you were required to look after?
"A. Yes, sir.
"Q. Do you know what you did at that lease that morning?

"A. Well, I don't know whether I got part off that engine or not; don't remember just exactly what I done that day; sometimes take parts over to another lease; don't know whether took part of that engine to fix up the Smith lease or not.
"Q. You know that you did make an inspection that morning?
"A. Yes, sir; stopped and done something; don't know exactly what I did do.
"Q. Then what did you do?
"A. Started on over to the Robbins lease before changed clothes at the tool house over there.
"Q. What happened on the way there?
"A. The car stopped, I got out and it back-fired and broke my arm.
"Q. You say it broke your arm, that same break Dr. Adair has described?
"A. Yes, sir.
"Q. Who did the Robbins lease belong to?
"A. Belonged to Alabama Petroleum Company.

* * *

"Q. Who was with you when you were injured?
"A. G. E. Williams.
"Q. Whose car where you in, or did you have an automobile at the time you were injured?
"A. This car.
"Q. Whose?
"A. G. E. Williams' car.

* * *

"Q. Now this was Mr. Williams' car—where was he, why were you cranking it instead of him?
"A. He was driving; naturally a man riding with another fellow gets out and cranks the car.
"Q. You got out to crank it?
"A. Yes, sir.
"Q. And he had not started to work that morning?
"A. He had not started to work; we were going to work together.
"Q. You were going to work together?
"A. Yes, sir; we got paid for nine hours.
"Q. Paid for nine hours—seven to five?
"A. Yes, sir; and an hour off at noon.
"Q. You and he were going together, the car was out in front of the boarding

house at Merrick City when this thing occurred?

"A. He came by and got me, you see.

\* \* \*

"Q. And you were in the car going to the Garner lease when this car stopped is that it?

"A. No, sir; going from the Garner lease to the Robinson lease.

\* \* \*

"Q. You don't remember what you did on the Garner lease that morning?

"A. No, don't remember exactly what did.

"Q. You would not swear that you even got out the car?

"A. Yes, sir; I swear I got out the car.

"Q. You don't remember anything else about what you did?

"A. Well, no, I don't remember what done, but done something."

Plaintiff is corroborated by S. E. Williams, who testified:

"Q. Do you know Arthur Talley?

"A. Yes, sir.

"Q. Were you with him on or about January 13th?

"A. Yes, sir.

"Q. What, if anything, happened to Mr. Talley on that day?

"A. I was working in the drilling department. Mr. Talley was in the production; and when the road would permit I would go back and forth in my car. On the morning of the 13th I was late, something like a quarter to seven before I ever got started out. After I had started Mr. Talley came along and I said, 'Red, you ain't gone yet?' so he got in the car and we started out.

"Q. Where did you start from?

"A. Merritt City.

"Q. Where were you going?

"A. I was going to work on the Robbins lease for the Alabama Petroleum Company.

"Q. And Mr. Talley was working for the Alabama Petroleum Company, too?

"A. Yes, sir.

"Q. Just state what you did.

"A. We went out, and he says: 'Let me run by this well a minute and I will go out to Robbins with you.' At that time I did not know whose well that was,

because I had only been working a few days and wasn't acquainted. Later I found it was one of the Alabama's wells. Well, he came back and I had crossed the branch and the car had stopped and I started to crawl out and he said: 'I'll crank it.' We went around to crank it and when he grabbed hold of the crank the motor made a kick and it whirled around and hit him. He said: 'I believe I have broken my arm.' I got hold of his arm and felt it and told him it was broke all to pieces. I went back to the boarding house and went after the doctor. I tried to get Dr. Dennis and he was away at the time. I tried then another doctor, I can't recall his name, and he was sick and said he couldn't come. I went back to the drug store and Dr. Browning came in pretty soon and I got him to go out there."

Plaintiff and G. E. Williams were the only witnesses to the accident and under their testimony as to the time and place and manner in which it took place it is clear that plaintiff had already entered upon the performance of his day's work for defendant Alabama Petroleum Company and that at time and place he was performing services arising out of and in the course of his employer's business within the contemplation of the Workmen's Compensation Law.

Defendants contend with much earnestness that plaintiff and G. E. Williams are unworthy of belief, but they have not impeached either of them nor even attempted to do so, except by rigid cross-examination of them; and we think that the witnesses, notwithstanding the acid test of skillful cross-examination, were as candid and positive as witnesses of their intelligence usually are.

The trial court heard the plaintiff testify and accepted his version of the time, place and manner of the accident.

The testimony of G. E. Williams is sought to be contradicted by evidence

tending to show that he worked on January 13, 1926, the day of the accident to plaintiff, although he testified that he did not. This evidence consists of time-records signed by Mr. McBride, superintendent of defendant Alabama Petroleum Company, Inc., but Mr. McBride testified that he did not remember whether Williams worked on January 13, 1926, or not. And as the time-records were not positively proved to be correct by the testimony of the witness that made them, we think they were insufficient to overcome the positive testimony of Williams himself that he was at work on the day in question.

The District Judge accepted the testimony of Williams as true and we find nothing in the record that would justify us in disregarding it.

Defendant Maryland Casualty Company paid plaintiff compensation to the amount of $520.00 and also paid $81.90 for medical attention to him and it alleges that it was induced to make these payments by false representations on the part of plaintiff and asks for judgment in reconvention against him for the amounts.

But even if it was induced to make the payments by such representations (as to which we express no opinion) we would be powerless to grant it the judgment asked for because, as stated in the inception of this opinion, the District Court did not render any judgment either for or against defendant Maryland Casualty Company on plaintiff's demand against it or for or against it on its reconventional demand against plaintiff and our jurisdiction is appellate only.

Mr. Vought, an adjuster for the Maryland Casualty Company, testified:.

"Q. I hand you, Mr. Vought, notice of accident made out in handwriting purporting to have been made by R. W. McBride, containing no signature, dated January 13, 1926, on form used by your company and purporting to show that Mr. Talley was injured on the Robbins lease, and ask you if you received that paper from the office of the Alabama Petroleum Company?

"A. Yes, sir; I received it on January 16, 1926.

"Q. State whether or not it was upon the strength of the information contained in that satement that you made the payment of compensation.

"A. Yes, sir; this, together with the doctor's report.

\* \* \*

"Q. Does the report say he was injured on the Robbins lease or while cranking a car?

"A. Just while cranking a car."

We are therefore of the opinion that defendants have entirely failed to make out the plea that the compensation and medical bill were paid under false representations on the part of the plaintiff.

In our opinion it is immaterial whether the accident happened exactly at seven o'clock in the morning or a few minutes after or a few minutes before that time, for the reason that the evidence shows that at the time it happened plaintiff had already entered upon the performance of his day's work; and the decisive question is not at what time the accident happened but had plaintiff begun his day's work when it happened, and we are of the opinion that the evidence shows he had.

As to the amount of compensation plaintiff is entitled to.

Defendants contend that if entitled to compensation at all plaintiff should not exceed $20.00 a week for not exceeding 150 weeks, for the reason that, as they allege, the testimony shows his disability was only between 50 and 60 per cent; and

plaintiff has asked that the award of the District Court be increased from one hundred seventy-five weeks to three hundred weeks.

On the record we are not prepared to say that the award was either excessive or too small; but if it is, either party has his remedy. Section 20 of the Workmen's Compensation Law as amended by Act 85 of 1926.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.